UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 29, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Stephen M. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-1999-CDA

Dear Counsel:

On July 10, 2024, Plaintiff Stephen M. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case (ECF 10) and the parties' briefs (ECFs 11, 13-14). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

On May 25, 2021, Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of October 7, 2019.[2] Tr. 213-18. Plaintiff's claims were denied initially and on reconsideration. *Id.* at 120-25, 127-31. On August 9, 2023, an Administrative Law Judge ("ALJ") held a hearing. *Id.* at 44-69. Following the hearing, on August 24, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. *Id.* at 7-30. On October 26, 2023, the Appeals Council denied Plaintiff's request for review, *id.* at 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R.

---

[1] Plaintiff filed this case against the "Commissioner of Social Security" on July 10, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] At the August 9, 2023 hearing, Plaintiff amended the alleged onset date to May 25, 2021. Tr. 58.

[3] 42 U.S.C. §§ 301 et seq.

*Stephen M. v. Bisignano*
Civil No. 24-1999-CDA
September 29, 2025
Page 2

§ 422.210(a).

## II.     THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engage[d] in substantial gainful during the period from his amended onset date of May 25, 2021 through his date last insured of December 31, 2021." Tr. 12. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "disorders of the spine; obesity; coronary artery disease (CAD); diabetes mellitus; hypertension; cardiomegaly; neurocognitive disorder; and bipolar disorder." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of seizures and chronic pain syndrome (CPS). *Id.* at 13. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] could not climb ladders, ropes, and scaffolds, but he could perform other postural movements on an occasional basis. [Plaintiff] was limited to simple, routine, and low stress tasks, with low stress defined as requiring work no more than occasional changes in the routine and work that allowed him to avoid fast-paced tasks, such as assembly line jobs involving production quotas. [Plaintiff] could not work around hazards such as moving dangerous machinery and unprotected heights. [Plaintiff] could not work in environments that would have subjected him to concentrated exposure to respiratory irritants and extreme temperatures and humidity. [Plaintiff]'s work environment needed to have close proximity to a restroom, such as in an office setting on the same floor.

*Id.* at 16. The ALJ determined that Plaintiff "was unable to perform any past relevant work" as an Inventory Clerk (DOT[4] #222.387-026), Auto Salesperson (DOT #273.353.010), and a Department

---

[4] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of*

*Stephen M. v. Bisignano*
Civil No. 24-1999-CDA
September 29, 2025
Page 3

Manager (DOT #299.137-010), but could perform other jobs that existed in significant numbers in the national economy. *Id.* at 22-23. Therefore, the ALJ concluded that Plaintiff was not disabled between the alleged onset date of May 25, 2021 and the date last insured, December 31, 2021. *Id.* at 24.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff challenges the ALJ's decision and claims the RFC lacks the support of substantial evidence in two separate ways. First, he insists that the ALJ failed to properly evaluate the medical opinions from Dr. Lawrence Schaffzin, Dr. J. Force, Dr. Elliott Rotman, and Dr. Ellen Lessans. ECF 11, at 6-10. Second, Plaintiff argues that the ALJ failed to develop the record regarding Plaintiff's cardiovascular issues. *Id.* at 10-12. Defendant counters that the RFC is supported by substantial evidence because the ALJ conducted a thorough review of the record, properly analyzed the medical opinions, and adequately developed the record regarding Plaintiff's cardiovascular issues. ECF 13, at 6-12. Neither of Plaintiff's arguments prevail.

   a. *The ALJ properly evaluated all medical opinions.*

The Court finds that the ALJ properly evaluated the medical opinions of Dr. Schaffzin, Dr. Force, Dr. Rotman, and Dr. Lessans. An ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. 20-3136-SAG, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. § 416.920c). The ALJ must "articulate . . . how persuasive [the ALJ] finds each medical opinion." *Id.* (citing 20 C.F.R.

---

*Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

§ 416.920c(b)).  Because "[s]upportability and consistency are the most important factors when considering the persuasiveness of medical opinions," an ALJ must "explain how [they] considered the supportability and consistency factors[.]"  *Id.*  ; *see also Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (observing that ALJ's "normally focus" on these two factors when assessing what, if any, weight to assign to medical source opinions).  Supportability and consistency "must be considered independently[.]" *Carlos F. v. Kijakazi*, No. 22-2049-BAH, 2023 WL 3293086, at *3; *see also Duane H. v. Kijakazi*, No. 20-3673-JMC, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors").

"Supportability generally refers to 'the objective medical evidence and supporting explanations provided by a medical source.'"  *Adrianna S.*, 2022 WL 112034, at *1 (quoting 20 C.F.R. § 416.920c(c)(1)).  "Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Carlos F.*, 2023 WL 3293086, at *3 (internal quotation marks and citation omitted); *see also Mary W. v. Comm'r of Soc. Sec.*, No. 20-5523, 2022 WL 202764, at *10 (S.D. Ohio Jan. 24, 2022) ("For the ALJ to have adequately discussed the supportability of [medical source] opinions, the ALJ needed to evaluate what the [medical source] said they based their opinions on—not simply how their opinions compared to the record evidence as a whole, which only goes to . . . consistency[.]"). Supportability is not considered independently when the ALJ only analyzes "the consistency of an opinion with other opinions from the . . . rest of the record[.]" *Timeka M. v. Kijakazi*, No. 22-3194-BAH, 2023 WL 5804645, at *3 (D. Md. Sept. 6, 2023).  Instead, the ALJ "must assess the relevance of 'the objective medical evidence and supporting explanations presented by a medical source' to the ultimate finding advanced by that medical expert."  *Id.* (quoting 20 C.F.R. § 416.920c(c)(1)).

"Consistency" is the extent to which the medical opinion is consistent with evidence from other medical and nonmedical sources in the claim.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The more consistent the opinion is with the other evidence, the more persuasive the opinion is. *Ibid.*  Consistency is an "outward facing inquiry," *Valentine v. O'Malley*, No. 24-0141-DCC-TER, 2024 WL 4445255, at *4 (D.S.C. Sept. 12, 2024), that requires the ALJ "to evaluate a medical source's opinion in comparison to other evidence in the record," *Rosa M. v. Kijakazi*, No. 22-4494-BHH-MHC, 2023 WL 9101308, at *4 (D.S.C. Dec. 8, 2023).  In assessing consistency, the ALJ must consider whether the opinion is "consistent with evidence from sources *other* than [the source of the opinion]." *Marie T. v. O'Malley*, No. 23-1320-CDA, 2024 WL 2114811, at *3 (D. Md. May 10, 2024) (emphasis in original).

First, the ALJ properly evaluated the medical opinions of Dr. Schaffzin and Dr. Force.  The ALJ began with supportability, finding that, in reaching their conclusion, both doctors noted "a history of CAD with prior myocardial infarctions and stenting, along with other physical impairments, but [also observed that Plaintiff's] strength, sensation, balance, and gait [] remained good overall."  Tr. 22.  The ALJ then pivoted to consistency, finding both opinions "generally persuasive" but adding more postural limitations to the RFC based on Plaintiff's testimony and the evidence as a whole.  *Id.*  The ALJ also found consistent both opinions' observation that Plaintiff's

"course of treatment [] remained conservative." *Id.* The decision is littered with evidence that Plaintiff's course of treatment remained conservative. *See id.* at 13, 15-16, 18, 20.

Second, the ALJ properly evaluated the medical opinions of Dr. Rotman and Dr. Lessans. The ALJ again began by articulating his supportability determination. The ALJ found the opinions "partially persuasive" because at the time of their release, they lacked sufficient evidence to include a moderate limitation in all "paragraph B" criteria and now, "given the updated evidence on file, which include[d] the neuropsychological exam report," the evidence supports a moderate limitation in all "paragraph B" criteria, except for a mild limitation regarding interacting with others. *Id.* at 21. The ALJ admitted that the evidence still supported Dr. Lessans' mild limitation with regard to interacting with others. *Id.* However, because both doctors lacked access to the updated evidence, the ALJ found the opinions less supported by the record as a whole. *See id.* Turning to consistency, the ALJ also found the opinions "partially persuasive" because of their reference to Plaintiff's positive response to his conservative course of treatment. *Id.* But the ALJ went a step further, labeling as severe Plaintiff's bipolar disorder and adding more mental limitations to the RFC given Plaintiff's testimony and other evidence, which, according to the ALJ, established "a neurocognitive disorder [that needed to be] . . . adequately account[ed] for[.]" *Id.* Moreover, the ALJ found Dr. Lessans' mild limitation with regard to interacting with others consistent with the evidence. *Id.* This analysis comports with the applicable regulations.

> b. *The ALJ adequately developed the record regarding Plaintiff's cardiovascular issues.*

Generally, "[t]he claimant has the burden of proving his disability[.]" *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986). However, ALJs have a duty to develop the record and consider all the relevant evidence when rendering a decision. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) ("[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."). Remand is necessary "if the record has evidentiary gaps that result in unfairness or clear prejudice[,]" *Lorenzo H. v. Saul*, No. 18-1211-GLS, 2019 WL 3720255, at *2 (D. Md. Aug. 5, 2019) (citing *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003)), or "was [not] complete enough to allow the ALJ to make all necessary determinations based upon substantial evidence," *Boyd v. Astrue*, No. 09-0150-BPG, 2010 WL 3369362, at *4 (D. Md. Aug. 23, 2010). The record "only needs to be substantial enough for the ALJ to make a determination regarding the claimant's disability." *Lorenzo H.*, 2019 WL 3720255, at *2 (citing 20 C.F.R. § 416.913(e)).

The ALJ relied on a substantial enough record regarding Plaintiff's cardiovascular issues. The ALJ's decision identified the following evidence:

> In terms of his cardiovascular impairments, the listings under 4.00 Cardiovascular System, have been considered, but records reflect good cardiovascular functioning overall and do not contain listing-level findings. . . .

> [Plaintiff] reported an onset of cognitive-related symptoms since his second heart attack in 2012. He worked after that heart attack, however, at the level of substantial gainful activity. . . .
>
> Echocardiograms contained in the file reflect a left ventricular ejection fraction that has generally remained around 50%. . . .
>
> [Plaintiff]'s treatment notes document generally good control of his cardiovascular impairments on his prescribed course of treatment and do not contain reports of persistent, ongoing chest pain. Cardiology records from August of 2021 mention that an echocardiogram revealed normal left ventricular function and wall motion. Records from September of 2021 mention that he reported minimal shortness of breath with walking. He also reported that he had been going swimming for exercise, and he reported being free of angina. An EKG, performed that month, showed sinus rhythm and moderate left ventricular hypertrophy.
>
> During a cardiology visit on November 15, 2021, [Plaintiff] had a BIM of 36.2, and he denied syncope. He had no edema and no anginal symptoms. He had 5/5 muscle strength throughout his bilateral upper and lower extremities. Hypertension was assessed as controlled (Ex. 8F/5). He was encouraged to exercise. Those records also mention that he underwent a 72-hour Holter study that was negative for significant arrythmias. He had significant venous insufficiency to his lower extremities, but he had no edema on examination. . . .
>
> In December of 2021, his CAD was assessed as stable, and he had good balance and minimal unsteadiness of his gait. . . .
>
> [T]he mental limitation in the RFC regarding low stress tasks also accounts for some of the symptoms of [Plaintiff]'s medically determinable physical impairments and considers the effect of stress and the pace of work on his overall functioning, especially in light of his alleged pain and his cardiovascular impairments. . . .
>
> In terms of [Plaintiff]'s mental impairments, the evidence supports the mental limitations in the above RFC. [Plaintiff] focused heavily on his memory-related issues when alleging why he is unable to work, but the evidence does not support the extent of his allegations. . . . He reported having cognitive problems since 2012, which corresponds with when he had his second heart attack, but more notably since 2018. During that exam, he arrived on time and unaccompanied. He reported no pain, and no pain behaviors were observed. . . .
>
> [T]he record confirms a history of CAD with prior myocardial infarctions and stenting, along with other physical impairments, but his strength, sensation, balance, and gait remained good overall.

*Stephen M. v. Bisignano*
Civil No. 24-1999-CDA
September 29, 2025
Page 7

Tr. 14-15, 18-19, 22.  Plaintiff contends that the ALJ had a duty to develop the record regarding his cardiovascular issues because the ALJ did not have "an opinion adequately addressing [his] [cardiovascular] issues relative to functioning." ECF 11, at 11.  However, although the ALJ did not consider opinions regarding Plaintiff's cardiovascular issues, the decision is still based on substantial evidence because the ALJ "considered Plaintiff's diagnostic tests results, physician examination findings, [and] treatment notes[.]" *Lorenzo H.*, 2019 WL 3720255, at *2 (affirming despite the ALJ's decision not to consider medical opinions regarding an impairment).  A decision need not be supported by a medical opinion to be based on substantial evidence. *Kimani v. Comm'r of Soc. Sec.*, No. 23-1017-ABA, 2024 WL 1676730, at *3, *6 (D. Md. Apr. 18, 2024).  Rather, "[t]he key consideration is whether the record contained sufficient medical evidence for the ALJ to make an informed decision regarding the claimant's impairment." *Lehman v. Astrue*, 931 F. Supp. 2d 682, 692-93 (D. Md. 2013) (internal quotation marks and citation omitted).  The record here contained sufficient medical evidence for the ALJ to make an informed decision regarding Plaintiff's cardiovascular issues.

*     *     *

The ALJ's reliance on substantial evidence and a robust discussion of Plaintiff's record in assessing the RFC permits meaningful review for the reasons explained above.  A reasonable mind would accept the evidence provided as sufficient to support the ALJ's conclusion. *See Laws*, 368 F.2d at 642.  That being the case, any disagreement that Plaintiff—or even the Court—might have with the ALJ's conclusions are not enough to reverse the Commissioner's decision. *Drumgold*, 144 F. 4th at 605.  Accordingly, remand is unwarranted.

## V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge